# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN CRUISE LINES, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> HMS AMERICAN QUEEN STEAMBOAT : <br> COMPANY LLC, HMS GLOBAL : <br> MARITIME, INC., and AMERICAN : <br> QUEEN STEAMBOAT OPERATING : <br> COMPANY, LLC, : <br> : <br> Defendants. : <br> : | Civil Action No.: _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, American Cruise Lines, Inc. ("Plaintiff" or "ACL"), by and through its undersigned attorneys bring this complaint against Defendants, HMS American Queen Steamboat Company LLC, HMS Global Maritime, Inc., and American Queen Steamboat Operating Company, LLC (collectively, the "Defendants" or "HMS"), for trademark infringement, the cancellation of a trademark registration, and unfair competition, in violation of federal and state law, and alleges as follows:

## PARTIES

1. Plaintiff, American Cruise Lines, Inc., is a Delaware corporation with a place of business at 741 Boston Post Road, Suite 200, Guilford, Connecticut 06437.

2. Defendant, HMS American Queen Steamboat Company LLC, is a Delaware Limited Liability Company with a place of business at 222 Pearl Street, New Albany, Indiana 47150.

3. Defendant, HMS Global Maritime, Inc., is a Delaware corporation with a place of business at 222 Pearl Street, New Albany, Indiana 47150.

4. Defendant, American Queen Steamboat Operating Company, LLC, is a Delaware Limited Liability Company with a place of business at 222 Pearl Street, New Albany, Indiana 47150.

## JURISDICTION AND VENUE

5. This action arises under the Acts of Congress under the Lanham Act, Title 15 U.S.C. § 1051, et seq., Delaware Uniform Deceptive Trade Practices Act, and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 and 1338 because this action involves federal questions of law.

6. This court has original jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1338(b) and 15 U.S.C. § 1121.

7. This court has supplemental jurisdiction over the claims brought under the common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

8. This Court may exercise personal jurisdiction over Defendants because each Defendant is organized under the laws of the State of Delaware. Accordingly, Defendants reside in Delaware and this Court has personal jurisdiction over HMS. Defendants have willfully and personally availed themselves of the privileges of conducting business in the State of Delaware and in the District of Delaware and Defendants have sought protection and benefit from the laws of the State of Delaware. As such, Defendants should have reasonably believed they would be subject to personal jurisdiction in Delaware and anticipate being haled into Delaware to defend under this forum's law. Moreover, HMS regularly solicits business from, does business with, and derives revenue from goods and/or services provided to customers in this district, including through its active websites where consumers in this judicial district can purchase certain of

Defendants' goods and services. As such, HMS should reasonably expect that its activities might have consequences herein.

9. Venue is proper in this judicial district because all Defendants are organized under Delaware law and reside in Delaware pursuant to 28 U.S.C. § 1391.

## BACKGROUND AS TO ACL'S BUSINESS AND ITS INTELLECTUAL PROPERTY

10. ACL is an award-winning and leading travel company providing cruise and passenger transport services to its customers that are located throughout the United States and worldwide and provides various overnight passenger cruise ship services with destinations within the United States' inland and coastal waterways (over seventy-five different rivers in twenty-eight states), including but not limited to the following regions: the Mississippi River, New England, Pacific Northwest and Alaska, and Southeastern United States. ACL's cruise ship services are collectively referred to herein as the "ACL Services."

11. ACL has adopted and used numerous common law marks comprising "AMERICAN" and owns numerous U.S. trademark registrations and applications comprising "AMERICAN" for use in connection with the ACL Services (collectively, the "American Marks"), including, but not limited to, AMERICAN CRUISE LINES® and AMERICAN RIVER LINES®.

12. On October 14, 2004, ACL filed an application for registration of the mark AMERICAN CRUISE LINES® in the United States Patent and Trademark Office on the Principal Register under the Lanham Act, 15 U.S.C. § 1051 et seq. (the "AMERICAN CRUISE Mark"). This application was assigned Serial No. 76/615,930 and covers the use of this mark in connection with "cruise ship services; transportation of passengers by ship" in Class 39. The date of first use of the AMERICAN CRUISE Mark was at least as early as October 1, 1999. This

application was allowed by the Patent and Trademark Office and issued as Registration No. 3019486 on November 29, 2005. The registration has acquired incontestable status with the approval of its Section 15 Declaration. This registration is active and valid.

13. On March 1, 2011, ACL filed an application for registration of the mark AMERICAN RIVER LINES® in the United States Patent and Trademark Office on the Principal Register under the Lanham Act, 15 U.S.C. § 1051 et seq. (the "AMERICAN RIVER Mark"). This application was assigned Serial No. 85/254,488 and covers the use of this mark in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in Class 39. The date of first use of the AMERICAN RIVER Mark was at least as early as June 2013. This application was allowed by the Patent and Trademark Office and issued as Registration No. 4637450 on November 11, 2014. The registration has acquired incontestable status with the approval of its Section 15 Declaration. This registration is active and valid.

14. Since at least as early as 2013, ACL has used and continues to expand its ACL Services under marks that focus on combining "AMERICAN" immediately followed by "RIVER."

15. At least as early as 2017, ACL adopted use of AMERICAN RIVER CRUISES in connection with advertising and marketing the ACL Services and ACL features the use of its AMERICAN RIVER CRUISES mark prominently and in close proximity to its AMERICAN CRUISE Mark on its main website. Please see Exhibit A for a copy of ACL's use of its AMERICAN RIVER CRUISES mark.

16. At least as early as 2013, ACL has adopted use of THE FUTURE OF AMERICAN RIVER CRUISING in connection with advertising and marketing the ACL

Services and ACL features the use of its THE FUTURE OF AMERICAN RIVER CRUISING mark prominently and in close proximity to its AMERICAN CRUISE Mark. Please see Exhibit B for copies of this advertisement and ACL's use of its THE FUTURE OF AMERICAN RIVER CRUISING mark.

17. At least as early as 2014, ACL has adopted use of ROLLIN' ON THE RIVER in connection with advertising and marketing the ACL Services and ACL features the use of its ROLLIN' ON THE RIVER mark prominently and in close proximity to its AMERICAN CRUISE Mark and its AMERICAN RIVER Mark. Please see Exhibit C for a copy of this advertisement and ACL's use of its ROLLIN' ON THE RIVER mark.

18. ACL's American Marks are strong and inherently distinctive. Since 1999, ACL has continuously used and expanded its use of and registrations for marks comprising "AMERICAN" in connection with the ACL Services and the American Marks have developed invaluable goodwill and reputation within the cruise industry as a designator of source of the ACL Services.

19. ACL has continuously used its AMERICAN RIVER Mark in connection with the ACL Services since 2013.

20. ACL's American Marks have become well-known throughout the cruise industry. Through its widespread, continuous, and substantially exclusive use of the American Marks to identify the ACL Services and ACL as its source, ACL owns valid and subsisting federal statutory and common law rights in the American Marks.

21. ACL has expended substantial time, money, and resources marketing, advertising, and promoting the ACL Services under the American Marks throughout the United States.

22.     The market success of the ACL Services offered under the American Marks and ROLLIN' ON THE RIVER mark has been extraordinary, and the relevant public has come to rely upon and recognize the ACL Services by the American Marks.

23.     ACL has defended its American Marks against infringers and potential infringers through various enforcement actions, including against Defendants through Cancellation Proceeding No. 92067180 (the "Cancellation Proceeding").

## BACKGROUND AS TO DEFENDANTS' UNLAWFUL CONDUCT

24.     Defendants are using the term "AMERICAN" combined with "RIVER(S)," either alone or in connection with other terms, in United States commerce in connection with cruise and passenger transport services related to the ACL Services.

25.     Defendants entered the passenger cruise services industry in 2011 and began offering overnight passenger cruises along the Mississippi River on a cruise ship named AMERICAN QUEEN in 2012.

26.     Since 2012, Defendants continued to offer overnight passenger cruise ship services in the United States under the AMERICAN QUEEN mark and expanded to include additional ships offering cruise services under different names comprising "AMERICAN" and expanded its geographical scope of where its cruise services were offered, including but not limited to the Ohio River, Tennessee River, Columbia River, and Snake River, some sharing the identical ports that ACL uses for its ACL Services.

27.     Both ACL and HMS market their cruise and passenger transport services in the United States by direct mail, magazines, through travel agents, and on the internet and offer these services in the same channels of trade.

28.     Since it began offering cruise ship services in 2012, HMS has consistently used and sought registrations for marks combining the term "AMERICAN" followed by another term

suggesting a female position of royalty in connection with these services. HMS has previously described this pattern of naming as its family of royalty-themed marks. For example, HMS has used and registered AMERICAN QUEEN, AMERICAN COUNTESS, AMERICAN DUCHESS, and AMERICAN EMPRESS (collectively, the "AMERICAN + Royalty Marks").

29. With at least constructive knowledge of ACL's rights in and to the AMERICAN RIVER Mark in connection with cruise and passenger transport services, HMS subsequently filed its own applications for marks combining "AMERICAN" and "RIVER(S)" in connection with cruise and passenger transport services that failed to include any term that suggests a position of royalty and deviated from its previous standard of AMERICAN + Royalty Marks and its self-described "family" of royalty-themed marks.

30. On December 5, 2016, HMS filed an application for registration of the mark UNIQUELY AMERICAN RIVER CRUISES in the United States Patent and Trademark Office under the Lanham Act, 15 U.S.C. § 1091 (the "HMS AMERICAN RIVER Registration"). This application was assigned Serial No. 87/256,818 and covers the use of this mark in connection with "arranging of cruises, transport of passengers" in Class 39. HMS' claimed date of first use of the HMS AMERICAN RIVER Registration was March 14, 2014. This application was amended to the Supplemental Register on June 13, 2017 and was issued Registration No. 5278444 on August 29, 2017.

31. Shortly after the registration date for the HMS AMERICAN RIVER Registration, ACL filed the Cancellation Proceeding on October 23, 2017 based on a likelihood of confusion with its American Marks, including its AMERICAN RIVER Mark.

32. On November 6, 2017, the Trademark Trial and Appeal Board suspended the Cancellation Proceeding pending the determination of a civil action, which as the date of filing

this complaint, the Court issued an Order, and an appeal is pending, but nothing relating to the AMERICAN RIVER Mark is still ongoing. The Cancellation Proceeding remains suspended.

33. Despite knowledge of Plaintiff's objection to Defendants' use of the HMS AMERICAN RIVER Mark, the Plaintiff's pending Cancellation Proceeding relating to registration of the HMS AMERICAN RIVER Registration, and ACL's use and registration of its AMERICAN RIVER Mark, Defendants, in a recent attempt to expand its scope of use and registration of AMERICAN RIVER marks that do not include a reference to its standard theme of royalty, filed for an additional U.S. trademark application in connection with services related to the ACL Services.

34. On February 7, 2020, HMS filed an application for registration of the mark ROLLIN' ON THE AMERICAN RIVERS in the United States Patent and Trademark Office on the Principal Register under the Lanham Act, 15 U.S.C. § 1051 et seq. (the "ROLLIN' RIVERS Mark"). This application was assigned Serial No. 88/789,550 and claims use of this mark in connection with "arranging of cruises, transport of passengers" in Class 39. HMS' claimed date of first use of the ROLLIN' RIVERS Mark was December 9, 2019. As of March 21, 2020, this application has not yet been assigned to an Examining Attorney. HMS' ROLLIN' RIVERS Mark and the HMS AMERICAN RIVER Registration are collectively defined herein as the "HMS AMERICAN RIVER Marks."

35. The recent change in circumstances and apparent expansion in use and attempted registration of the ROLLIN' RIVERS Mark, despite the pending objection by Plaintiff to HMS's use and registration of the HMS AMERICAN RIVER Registration, dictates action by Plaintiff as it is being damaged by such continued use and expansion beyond the scope of HMS' prior use of

and registrations for its AMERICAN + Royalty Marks that deviates from its self-described standard naming conventions that focus on including royalty-themed marks.

36. At no time did ACL directly or indirectly consent to HMS' use, registration, and/or application of the HMS AMERICAN RIVER Marks, any mark combining "AMERICAN" with "RIVER," or any mark that deviated from HMS' AMERICAN + Royalty Marks or was outside of what HMS considered its "family" of royalty-themed marks in connection with cruise and passenger transport services and ACL has always and continuously intended to actively pursue the Cancellation Proceeding once the suspension is removed.

37. Defendants are using the HMS AMERICAN RIVER Marks in connection with cruise and passenger transport services related to the ACL Services, including but not limited to, through its advertising, marketing, brochures, and on its website at www.americanqueensteamboatcompany.com. See Exhibit D for screenshots of the HMS AMERICAN RIVER Marks in use.

38. In light of ACL's use of the AMERICAN RIVER Marks dating back to at least as early as 2013, ACL has priority over the HMS AMERICAN RIVER Marks.

39. Despite notice of ACL's intellectual property rights in the American Marks, namely, the AMERICAN RIVER Mark, HMS has yet to discontinue its use, cancel its registration, and/or withdraw its application for the HMS AMERICAN RIVER Marks.

## COUNT 1 - FEDERAL TRADEMARK INFRINGEMENT

40. ACL repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

41. ACL's American Marks, including its AMERICAN RIVER Mark, are federally registered and, as such, the corresponding registrations are evidence of ACL's exclusive right to use the American Marks in connection with the ACL Services. 15 U.S.C. § 1115.

42. ACL owns a valid and active U.S. Trademark Reg. No. 4637450 for AMERICAN RIVER LINES® that covers the use of this mark in connection with "cruise ship services; transportation of passengers by ship; arranging and conducting cruises for others" in Class 39. The date of first use of the AMERICAN RIVER Mark was at least as early as June 2013. This application was registered by the Patent and Trademark Office on November 11, 2014.

43. Prior to HMS' ROLLIN' RIVERS Mark, ACL adopted use of the common law trademark for ROLLIN' ON THE RIVER in connection with the ACL Services. ACL has used its ROLLIN' ON THE RIVER mark featured prominently and in close proximity to its federally registered AMERICAN CRUISE Mark and its AMERICAN RIVER Mark in advertising and marketing materials for its ACL Services provided to consumers throughout the United States. See Exhibit C.

44. ACL's American Marks are strong and inherently distinctive. Since 1999, ACL has continuously used "AMERICAN" in connection with the ACL Services. ACL has continuously used its AMERICAN RIVER Mark in connection with the ACL Services since 2013. Through ACL's continuous use, the American Marks have developed invaluable goodwill and reputation within the cruise industry as a designator of source of the ACL Services.

45. ACL's well-known and federally registered AMERICAN RIVER Mark and the HMS AMERICAN RIVER Registration are similar with respect to sound, appearance, meaning, and create the same commercial impression.

46. The HMS AMERICAN RIVER Marks both wholly encompass the first two words of ACL's AMERICAN RIVER Mark and combine the term AMERICAN immediately followed by the term RIVER(S).

47. ACL's ROLLIN' ON THE RIVER mark and HMS' ROLLIN' ON THE AMERICAN RIVERS mark are nearly identical with respect to sound, appearance, meaning, and

overall commercial impression. The only differences include HMS' addition of "AMERICAN" and the plural form of "RIVER," neither change being sufficient to minimize a likelihood of consumer confusion, especially given the similarity of services offered under these marks and that the American Marks are used in close proximity to ACL's ROLLIN' ON THE RIVER mark.

48. The cruise and passenger transport services offered by HMS under the HMS AMERICAN RIVER Marks are identical to the ACL Services offered by ACL under its AMERICAN RIVER Mark and/or ROLLIN' ON THE RIVER mark.

49. Use of the HMS AMERICAN RIVER Marks for the ACL Services will likely lead to confusion, mistake, or deception of the public as to the source of the services within the meaning of Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d) and 15 U.S.C. § 1125 and would otherwise cause injury and damage to the AMERICAN RIVER Mark and/or ROLLIN' ON THE RIVER mark, as well as its good will and reputation.

50. Defendants have infringed Plaintiff's AMERICAN RIVER Mark and/or ROLLIN' ON THE RIVER mark in interstate commerce by various acts, including using the HMS AMERICAN RIVER Marks in connection with cruise and passenger transport services that are highly related to the ACL Services. This unauthorized use by Defendants constitutes infringement of ACL's existing AMERICAN RIVER Mark and ROLLIN' ON THE RIVER mark, as described above, in violation of the Lanham Act, 15 U.S. C. § 1051 et seq., to the substantial and irreparable injury of the public and of Plaintiff's AMERICAN RIVER Mark, ROLLIN' ON THE RIVER mark, business, reputation, and goodwill.

51. ACL has not given consent directly or indirectly to Defendants to use the HMS AMERICAN RIVER Marks, or any mark similar thereto, in the manner in which Defendants is using the HMS AMERICAN RIVER Marks.

52. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its AMERICAN RIVER Mark, ROLLIN' ON THE RIVER mark, and in its business, reputation, and goodwill. ACL's damages from the aforesaid unlawful actions of Defendants, to the extent ascertainable, have not yet been determined.

53. By the forgoing actions, Defendants have clearly engaged in willful trademark infringement in violation of 15 U.S.C. § 1117.

54. ACL seeks attorney's fees and costs given the willful conduct of Defendants.

55. ACL seeks treble damages given the willful conduct of Defendants.

**COUNT 2 – CANCELLATION OF U.S. TRADEMARK REG. NO. 5278444 PURSUANT TO 15 U.S.C. §§ 1064 and 1119**

56. ACL repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

57. Section 37 of the Lanham Act, 15 U.S.C. § 1119, grants the power for a court to order the cancellation of a federally-registered trademark in whole or in part upon "any action involving a registered mark."

58. ACL's AMERICAN RIVER Mark is federally registered and, as such, is prima facie evidence of the exclusive right of ACL to use the AMERICAN RIVER Mark in connection with the ACL Services appearing in this registrations. 15 U.S.C. § 1115.

59. ACL's AMERICAN RIVER Mark has acquired incontestable status. Thus, the registration for this mark provides conclusive evidence of the validity of the registered mark, of ACL's ownership of the mark, and of ACL's exclusive right to use the registered mark in

commerce in connection with the services specified in the affidavit filed in connection with this registration. 15 U.S.C. § 1115.

60. ACL's AMERICAN RIVER Mark is valid, active, and has been continuously used in connection with the ACL Services since as early as June 2013.

61. With at least constructive knowledge of ACL's rights in and to the AMERICAN RIVER Mark and ACL's American Marks, Defendants filed U.S. Trademark Application for the HMS AMERICAN RIVER Registration for related cruise and passenger transport services to the ACL Services. The HMS AMERICAN RIVER Registration subsequently received a registration.

62. ACL has priority in its AMERICAN RIVER Mark over the HMS AMERICAN RIVER Registration for the reasons discussed in more detail above.

63. For the reasons discussed in more detail above, Defendants' HMS AMERICAN RIVER Registration and its use of the same is likely to cause confusion, cause mistake, or to deceive consumers into believing Defendants, the HMS AMERICAN RIVER Registration, or any corresponding services offered under this mark are affiliated or associated with ACL's AMERICAN RIVER Mark, thereby causing great harm to ACL's reputation and goodwill and to the consuming public.

64. ACL has not given consent directly or indirectly to Defendants to use or register the HMS AMERICAN RIVER Registration or any mark similar thereto.

65. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of ACL in its AMERICAN RIVER Mark, and in its business, reputation, and goodwill and harm to the consuming public. ACL's damages from the aforesaid unlawful actions of Defendants, to the extent ascertainable, have not yet been determined.

66. ACL seeks cancellation of Defendants' U.S. Trademark Registrations No. 5278444.

## COUNT 3 - FEDERAL UNFAIR COMPETITION

67. ACL repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

68. ACL and HMS are direct competitors and both offer cruise services, including but not limited to overnight passenger river cruises within the United States.

69. ACL's American Marks are strong and inherently distinctive. Since 1999, ACL has expanded its use of its American Marks and has developed invaluable goodwill and reputation within the cruise industry as a designator of source of the ACL Services.

70. ACL has continuously used its AMERICAN RIVER Mark in connection with the ACL Services since 2013.

71. After ACL's adoption and use of its AMERICAN RIVER Mark in connection with the ACL Services, Defendants adopted and used the HMS AMERICAN RIVER Registration in connection with highly related cruise and passenger transport services, including but not limited to, overnight passenger river cruises in March 2014.

72. After ACL's adoption and use of its common law ROLLIN' ON THE RIVER mark, Defendants adopted and used the HMS ROLLIN' RIVERS Mark in connection with highly related cruise and passenger transport services beginning in December 2019.

73. Defendants' activities are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to ACL's reputation and goodwill.

74. Defendants have unfairly competed with ACL's AMERICAN RIVER Mark and ROLLIN' ON THE RIVER mark in interstate commerce by various acts, including using the

HMS AMERICAN RIVER Marks with highly related cruise and passenger transport services, including but not limited to, overnight passenger river cruises. This unauthorized use by Defendants constitutes unfair competition to the substantial and irreparable injury of the public and of ACL's AMERICAN RIVER Mark, ROLLIN' ON THE RIVER mark, business, reputation, and goodwill in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

75. The activities of Defendants complained of herein constitute willful and intentional tort, in derogation of ACL's rights. Acts of unfair competition commenced and have continued in spite of Defendants' knowledge that the use, registration, and application of the HMS AMERICAN RIVER Marks in connection with its cruise and passenger transport services were and are in contravention of ACL's rights.

76. ACL has not given consent directly or indirectly to Defendants to use the HMS AMERICAN RIVER Marks, or any mark similar thereto, in the manner in which Defendants are using such marks.

77. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of ACL in its AMERICAN RIVER Mark, ROLLIN' ON THE RIVER mark, and in its business, reputation, and goodwill. ACL's damages from the aforesaid unlawful actions of Defendants, to the extent ascertainable, have not yet been determined.

78. ACL seeks attorney's fees and costs given the willful conduct of Defendants.

79. ACL seeks punitive damages given the willful conduct of Defendants.

**COUNT 4 - UNFAIR COMPETITION IN VIOLATION OF DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT**

80. ACL repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

81. HMS' actions set forth herein constitute unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of Delaware's Uniform Deceptive Trade Practices Act ("DUDTPA"), 6 Del. C. § 2532, which prohibits deceptive trade practices, including, but not limited to when a person, "(1) passes off goods or services as those of another; (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; . . . or (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

82. HMS' actions complained of herein are unlawful, unfair, and/or deceptive trade practices, constituting unfair business competition in violation of DUDTPA, namely, knowingly and willfully advertising and trading off of the goodwill of ACL's AMERICAN RIVER Mark and ROLLIN' ON THE RIVER mark with the confusingly similar HMS AMERICAN RIVER Marks without direct or indirect authorization from ACL.

83. HMS' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of ACL in its AMERICAN RIVER Mark, ROLLIN' ON THE RIVER mark, and in its business, reputation, and goodwill and ACL is entitled to injunctive relief and attorney's fees and costs as a result of HMS' willful and deceptive business acts and practices.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, ACL prays for relief against Defendants as follows:

1. That the Court preliminary and permanently enjoin and restrain Defendants, their officers, directors, agents, employees and all persons in active concert or participation with Defendants who receive actual notice of the injunction, by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

      (a)      infringing or contributing to the infringement;

      (b)      engaging in any acts or activities directly or indirectly calculated to infringe ACL's AMERICAN RIVER Mark or ROLLIN' ON THE RIVER mark;

      (c)      using in selling, offering for sale, promoting, advertising, marketing or distributing of Defendants' services and/or products, advertisements or marketing materials that use the term "AMERICAN RIVER(S)," "ROLLIN' ON THE RIVER," or any mark similar thereto;

      (d)      using any configuration or design that are confusingly similar to ACL's AMERICAN RIVER Mark or ROLLIN' ON THE RIVER mark; and

      (e)      otherwise competing unfairly or deceptively with ACL in any manner whatsoever.

      2.      That the Court find that Defendants are infringing ACL's AMERICAN RIVER Mark and ROLLIN' ON THE RIVER mark, are competing unfairly with, and committing deceptive trade practices against ACL.

      3.      That the Court order the cancellation of Defendants' U.S. Trademark Registration No. 5278444.

      4.      That the Court Order Defendants to deliver up to ACL for destruction, at Defendants' expense, catalogs, web site materials, literature, brochures, quotes, packaging, signs, promotional materials, advertisements, and other communications to the public in the possession or under the control of Defendants that use any of the HMS AMERICAN RIVER Marks or any other designations similar to the AMERICAN RIVER Mark and/or ROLLIN' ON THE RIVER mark, and any other material or any representations that are, or may contain, the HMS

AMERICAN RIVER Marks or any other terms similar to the AMERICAN RIVER Mark and/or ROLLIN' ON THE RIVER mark.

5. That the Court Order Defendants to account for and pay to ACL the damages to which ACL is entitled as a consequence of the infringement of ACL's AMERICAN RIVER Mark and ROLLIN' ON THE RIVER mark.

6. That the Court Order Defendants to account for and to pay over to ACL all damages suffered by ACL as a result of Defendants' unfair competition.

7. That the Court Order Defendants to account for and to pay over to ACL all damages suffered by ACL as a result of Defendants' deceptive trade practices.

8. That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of Defendants so as to prevent fraud on the Court and so as to ensure the capacity of Defendants to pay, and the prompt payment of, any judgment entered against Defendants in this action.

9. That the Court award ACL its compensatory, incidental, and consequential damages.

10. That the Court award ACL enhanced, treble, and/or punitive damages.

11. That the Court award ACL its reasonable attorney's fees and the costs of this action.

12. That the Court grant ACL such other further relief as is just and proper.

**DEMAND FOR JURY TRIAL**

ACL demands a trial by jury on all triable issues of fact.

American Cruise Lines, Inc.

By Its Attorneys,

| | |
|---|---|
| DATED:  March 30, 2020 | *Thomas J. Francella, Jr.*<br>Thomas J. Francella, Jr. (No. 3835)<br>COZEN O'CONNOR<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone:  (302) 295-2023<br>Facsimile:  (302) 250-4495<br>Email:  tfrancella@cozen.com<br><br>Camille M. Miller<br>Melanie A. Miller<br>Kevin M. Gibbs<br>Cozen O'Connor<br>One Liberty Place, 1650 Market Street<br>Philadelphia, Pennsylvania  19103<br>Telephone:  (215) 665-2000<br>Facsimile:   (215) 701-2273<br>cmiller@cozen.com<br>mmiller@cozen.com<br>kgibbs@cozen.com |